Phillip L. GIBSON, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 697–85C.

United States Claims Court.

Sept. 26, 1986.

Wade R. Bosley, Marion, Ind., for plaintiff; Bosley & Schatz, of counsel.

Ralph A. Mittelberger, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant; David M. Cohen, Director, Thomas W. Peterson, Asst. Director, and Paul Simmons, Dept. of Agriculture, of counsel.

## MEMORANDUM OPINION

LYDON, Judge:

This case comes before the court on plaintiff's Motion for Summary Judgment and defendant's Motion to Dismiss or, in the Alternative, its Cross-motion for Summary Judgment. At issue is whether plaintiff was eligible to participate in the Department of Agriculture's "Payment-In-Kind" (PIK) Program for 1983. The PIK program was conducted in accordance with the Agricultural Act of 1949, *as amended,* 7 U.S.C. § 1421 *et seq.* (1982) and the Commodity Credit Corporation Charter Act, *as amended,* 15 U.S.C. § 714 *et seq.* (1982) and Department of Agriculture implementing regulations 7 C.F.R. Parts 713 and 770 (1983). In substance, the PIK program provided agricultural commodities to participating farmers or producers who, in turn, agreed not to plant the same commodities on designated acreage during the crop year. In its complaint, plaintiff challenges a decision by the Department of Agriculture Stabilization and Conservation Service through its Deputy Administrator for State and County Operations (DASCO) holding that plaintiff was ineligible to participate in the PIK program for crop year 1983. Plaintiff seeks to have this court overturn DASCO's decision and find that he was eligible for PIK participation in 1983. In the alternative, plaintiff seeks a remand of this case to DASCO for a new hearing. The parties waived oral argument and submitted the matter on the original briefs submitted by the parties. For the reasons set forth below, plaintiff's Motion for Summary Judgment and defendant's Motion to Dismiss are denied. However, defendant's Motion for Summary Judgment is granted.

## I.

### A. *Background Statement*

The Secretary of Agriculture is empowered to determine the amounts, terms and conditions of price support operations for farm commodities. 7 U.S.C. § 1421(b) (1982). The Secretary also is empowered to determine the extent to which such operations are carried out. *Id.* One method by which price support programs are carried out is through utilization of the Commodity Credit Corporation (CCC). The CCC was established by the Commodity Credit Corporation Charter Act, 62 Stat. 1070 (1948), codified as 15 U.S.C. §§ 714–714p (1982). The CCC is a wholly owned federal corporation. *See* 15 U.S.C. § 714e (1982). It was created, *inter alia,* to stabilize, support, and protect farm income and prices and to assist in the maintenance of a balanced supply of agricultural commodities. 15 U.S.C. § 714 (1982). To achieve this goal, the CCC is empowered to "[r]emove and dispose of or aid in the removal or disposition of surplus agricultural commodities." 15 U.S.C. § 714c(d) (1982).

For the crop year 1983, a support program was implemented for feed grain, including corn. 7 C.F.R. Part 713 (1983). Corn was the commodity for which plaintiff sought PIK participation. The program featured both an "acreage reduction program", 7 C.F.R. § 713.52 (1983), and a "land diversion program", 7 C.F.R. § 713.-53 (1983). However, in late 1982, it was apparent that even with these programs the supply of commodities would exceed demand. 48 Fed.Reg. 1476 (1983). Therefore, it was deemed necessary to divert additional acres of crops from production. *Id.* To achieve this reduction in production, the Payment-In-Kind Program (PIK) was implemented in 1983 in accordance with regulations set forth in 7 C.F.R. Part 770 (1983). PIK was enacted "to adjust the

total national acreage of certain commodities to desirable goals" and to compensate farmers by means of supplying them with like commodities. 48 Fed.Reg. 1476 (1983).

Under the PIK program, a farmer[1] entered into a contract with the Department of Agriculture, through the CCC, in which the farmer agreed to reduce (set-aside) the acreage he normally planted in a commodity designated in 7 C.F.R. § 770.1(b) (corn was so designated in said regulation) and devote said acreage to an approved conserving use. Thereafter, conserving acreage generally was used for a cover crop. 7 C.F.R. § 770.1(a)(1983). In exchange for devoting reduced or set-aside acreage to a conserving use, the farmer received compensation in the form of the commodity normally planted on the acreage. *Id.* Under the program, 10–30 percent of the farm acreage base could be devoted to the conserving use. 7 C.F.R. § 770.2(a)(2)(i)(1983). Payment to the farmer, in the form of the designated commodity, was calculated by multiplying the yield of the commodity by the acreage devoted to a conserving use which would otherwise have been planted (not including acreage eligible for cash land diversion payments), and by a designated percentage. 7 C.F.R. § 770.3(a)(1)(1983). The designated percentage for corn was 80 percent. *Id.* Payment generally was made within 5 months of the normal harvest date for the commodity in the area where the farm was located. 7 C.F.R. § 770.3(a)(3) (1983).

In addition to the program described above, another PIK program was implemented. Under this PIK program, 100 percent of a farm's acreage base for a designated commodity was devoted to an approved conserving use. 7 C.F.R. § 770.2(a)(2)(ii)(1983). A contract for this "100 percent PIK" was awarded by competitive bid. *Id.* The bid stated the percentage of the established yield of the designated commodity the farmer would accept as compensation. 7 C.F.R. § 770.5(b)(2)(1983). For corn, the bid could not exceed 80 percent of the established yield. *Id.*

In December 1972, the CCC's administration of the Commodity Support Programs generally was delegated to the Department of Agriculture's Administrator, Agricultural Stabilization and Conservation Service ("ASCS"). *See* 7 C.F.R. § 2.65(a) (1983). That delegation was in effect in 1983. Administration under ASCS, organizationally, had a three-tier structure, with officials at the county (lower level), state (next level) and federal (highest level) levels. In accordance with 16 U.S.C. § 590h(b) (1985 and 1986 Supp.), farmers in a county elect eligible persons to serve on the county Agricultural Stabilization and Conservation (ASC) committee. The county ASC committee administers commodities programs at the local level, e.g., entering into program-related contracts with farmers on behalf of CCC and making determinations about participant eligibility in related programs, etc. County ASC committees are supervised by the state ASC committee, which consists of three to five farmers from the state appointed by the Secretary of Agriculture. The state committee administers the various programs on a statewide basis. At the federal level, the state committees are supervised by the Deputy Administrator, State and County Operations (DASCO).

Farmers who are dissatisfied with determinations by a county committee regarding, e.g., program eligibility, can request reconsideration thereof and obtain an informal hearing. A farmer may appeal a final county committee determination to the state ASC committee. A state ASC committee determination can be appealed to DASCO. DASCO's determination is the final administration action on the matter. *See* 7 C.F.R. Part 780 (1986). The above appeal process was in effect in 1983.

### B. *Facts*

Plaintiff is the owner of a farm designated "F–603", located in Grant County,

---

**1.** More than one individual per farm could participate in PIK, *see* 7 C.F.R. §§ 770.1 and 770.5 (1983). The distinction between an "operator" and a "producer" is not important for purposes of this case. Accordingly, this opinion will utilize the term "farmer" to designate a participant in the PIK program.

Indiana. The farm in 1983 had a 160 acre corn base. Plaintiff leased farm "F–603" to Kim Manwell ("Manwell") for the crop years 1980 through 1982 inclusive on a cash rental basis. In addition, plaintiff rented Manwell facilities in which to store the crop produced on farm "F–603." Manwell plowed the farm in the fall of 1982 for 1983 planting and contacted plaintiff in an effort to set a cash rental for 1983.[2] However, plaintiff and Manwell were not able to agree on terms for a 1983 rental. Therefore, farm "F–603" was not leased to Manwell or anybody else for the crop year 1983.

On February 10, 1983, plaintiff signed a "contract" (in essence an application), as producer, and submitted a bid for participation in the 100 percent PIK program for the crop year. On March 17, 1983, Manwell signed, as operator, the "contract" executed by plaintiff on February 10. Manwell indicated on the "contract" that his share of the crop would be "0".[3] The chairman of the Grant County ASCS committee signed the "contract" (acknowledged the application) on March 18, 1983. On March 25, 1983, the county committee sent plaintiff "intention to participate and payment in kind if applicable" forms and gave him instructions about the PIK program.

On June 7, 1983, the Grant County ASC committee held its regular meeting. At the meeting, it was determined that plaintiff was entitled to participate in the PIK program. Both plaintiff and Manwell subsequently were notified of this decision by mail. Each letter informed its respective recipient he had 15 days to request a redetermination of the committee's decision. Manwell made such a request within the 15 day time period by sending a letter dated June 21, 1983. In this letter, Manwell stated his belief that he had been eliminated from the farm so plaintiff could participate in the PIK program. Under applicable regulations, if a tenant farmer is removed by his landlord so that the landlord could replace him in the PIK program, the farm in question would be deemed ineligible for the PIK program. 7 C.F.R. § 713.110 (1983).

After reconsideration, the county committee reached the same decision. On July 5, 1983, the committee notified plaintiff and Manwell of its second decision by mail. The letters informed the recipients they had 15 days to appeal to the state committee. By letter dated July 19, 1983, Manwell appealed to the state committee within the required time period.[4] On August 12, 1983, the state committee reversed the county committee's decision. It determined that Manwell was displaced from the farm due to plaintiff's participation in the PIK program. Therefore, the state committee ruled, the farm was ineligible to participate

2. Manwell alleged plaintiff avoided him and enrolled the farm in PIK as owner operator. Manwell and plaintiff could not agree on a rental price and had considerable conflict concerning grain stored on the farm. Plaintiff did not replace Manwell as tenant, but hired out the planting of the farm.

3. At this point, Manwell was still interested in farming F–603 and PIK participation. Manwell claimed county officials advised him to sign the "contract" forms, to avoid the PIK application deadline of March 17, 1983, and then work out an agreement with plaintiff relative to the various details. The parties were unable to reach agreement on these details.

4. In his appeal to the state committee, Manwell advised he was not informed of a June 15, 1983, meeting between plaintiff and the county committee. He further advised the state committee that he had farmed the land for 3 years, the last year, 1982, under a verbal lease. He alleged he made cash rental proposals relative to 1983 to plaintiff before March 1, 1983, but plaintiff, who was usually in Kentucky where most of his business interests were located, was unable or unwilling to give him a rental price. Manwell told the state committee he would not have done the 1982 fall plowing and would have tried to rent other farms had he known he would not be farming plaintiff's farm in 1983. Manwell also argued that plaintiff did not engage in farming as his primary business and hired others to plant and raise crops on his farm. In response to plaintiff's criticism of his farm operation, Manwell advised that if he had not done an adequate job of operating plaintiff's farm, the farm would not even be eligible for the PIK program. Manwell concluded his appeal by contending that if the farm had not been in the PIK program he was sure he would still be farming plaintiff's farm.

in PIK in accordance with existing regulations.

Letters were sent to plaintiff and Manwell, dated August 16, 1983, advising them of the state committee's decision. The letter to plaintiff informed him that he could appeal to the federal level (DASCO) within 15 days. On August 18, 1983, plaintiff sent a letter to DASCO appealing the state committee's decision. In his letter, plaintiff stated that he believed the state committee's decision was in error.[5] A hearing was set for September 12, 1983, on plaintiff's appeal, and, as permitted by agency rules, plaintiff's hearing was conducted by telephone on that date.

By letter dated October 5, 1983, DASCO informed plaintiff that it had decided to uphold the state committee's decision. The DASCO letter stated, in pertinent part:

Program provisions regarding the fair treatment of operators, tenants and sharecroppers provide that program participation shall not be approved for a farm on which a landlord or operator has reduced the number of tenants on the farm in anticipation of or because of participation in the program. Our review of this entire matter indicates that your farm should not have been approved for program participation because the number of tenants was reduced from the number on the farm in 1982. Although your views and comments including those expressed during the telephone hearing are appreciated, we find the State committee has properly acted in accordance with applicable program regulations and their delegated authority. Therefore, we have determined to deny your appeal that you be authorized to receive all program benefits under the 1983 programs.

While denying plaintiff's appeal, DASCO concluded its decisional letter as follows:

Although we have determined to deny your appeal our review of the case file indicates you relied on the action of the Grant County committee to participate in the program without a tenant we are granting partial relief. That is, provided there is total compliance with the programs, benefits are being authorized not to exceed the 1982 cash rental per acre for farm F-603 times the number of acres required for conservation use acreage under the 1983 programs (for farm F-603). Also authorized are reasonable costs, as determined by the Grant County committee, for devoting the land under the programs to an approved conservation use. Further, you will not be considered as the 1983 operator of the farm for the purpose of future farm programs.

Thereafter, the county committee determined $24,664 as indicative of lost rental and $13,308.90 as reasonable costs. The total determination was $37,972.90, which sum, it would appear, is the approximate monetary equivalent of 11,235 bushels of corn. Plaintiff contends it has received no payment of any kind in this regard. Defendant claims plaintiff received grain worth $37,972.90 in equitable relief in accordance with the DASCO decision. There is no evidence that plaintiff sought any payment from the county committee relative to DASCO's October 5, 1983, decision and was thereafter turned down. Because this partial relief was under PIK, plaintiff's award it seems was to be in the form of

---

**5.** Plaintiff pointed out, in his appeal letter, that his farm had been leased to Manwell since March 1, 1980, under a 5-year lease. Under this lease, the rental price was subject to renegotiation at the end of each crop year for the ensuing year. If a rental price could not be agreed upon for a crop year, the lease was to be null and void. Plaintiff stated in his appeal letter that during the 3 years Manwell farmed under the lease, he was very negligent with weed control. As to negotiating a rental price for the 1983 crop year, plaintiff advised that while he and Manwell talked several times about it, they could not come to terms. Plaintiff further advised that in January 1983, Manwell advised him he would not be able to rent any of the farm and that he was going to file Chapter 11 bankruptcy. It was in February 1983, plaintiff stated, that he signed up to participate in PIK and made his bid for 100 percent participation. There is evidence in the record that Manwell petitioned the Bankruptcy Court for relief in March 1983.

11,235 bushels of corn. It appears that if plaintiff's farm had not been ruled ineligible for PIK, he would have received a determination equivalent to 14,630 bushels of corn.

While not crystal clear from plaintiff's written submissions, it would appear that plaintiff seeks to recover the difference between 14,630 bushels and 11,235 bushels, or 3,395 bushels of corn or its monetary equivalent. Since this court has power only to enter money judgment (*see United States v. King*, 395 U.S. 1, 2–3, 89 S.Ct. 1501, 1501–02, 23 L.Ed.2d 52 (1969)), plaintiff presumably seeks the monetary equivalent of 3,395 bushels of corn as of the 1983 crop year.

## II.

### —A—

Defendant has moved, in the alternative, for dismissal of plaintiff's complaint. Defendant argues that 7 U.S.C. §§ 1429 and 1385 (1982) interpose a jurisdictional bar on this court to hear this case. The court rejects defendant's contention and holds that it has jurisdiction. Therefore, defendant's alternative motion to dismiss is denied.

Section 1429 provides in pertinent part: Determinations made by the Secretary under this Act shall be final and conclusive: *Provided,* that the scope and nature of such determination shall not be inconsistent with the provisions of the Commodity Credit Corporation Charter Act.

7 U.S.C. § 1429 (emphasis in original).

■ Defendant claims that this provision, as interpreted by the Court of Claims in *Carruth v. United States*, 224 Ct.Cl. 422, 437, 627 F.2d 1068, 1076 (1980), prevents the court from having jurisdiction over this case. Defendant, however, misreads the holding in that case. Contrary to defendant's assertion, *Carruth* did not hold that § 1429 precluded the Court of Claims from reviewing determinations by the Secretary of Agriculture. The Court of Claims merely held that its power of review was "very limited." *Carruth v. United States, supra,* 224 Ct.Cl. at 437, 627 F.2d at 1076. The Court of Claims held that § 1429 did not prevent it from examining the Secretary's decisions to make sure he acted rationally and within his statutory authority. *Id.* Plaintiff is entitled to that type of judicial review in this case.

■ Section 1385 states:

.The *facts* constituting the basis for any * * * payment under the * * * feed grain * * * programs authorized by [the Agricultural Act of 1949] * * * any * * price support operation, of the amount thereof, when officially determined in conformity with the applicable regulations prescribed by the Secretary or by the [CCC], shall be final and conclusive and shall not be reviewable by any other officer or agency of the Government * *.

7 U.S.C. § 1385 (emphasis supplied). The clear language of this provision shows that it is addressed only to factual determinations. Agency factual determinations under § 1385 are unreviewable. *Gross v. United States*, 205 Ct.Cl. 605, 618, 505 F.2d 1271, 1279 (1974). However, this court can review legal conclusions based on the facts as determined by the agency. Section 1385 does not prevent judicial review of questions of law or allegations and proof by plaintiff that an agency decision is arbitrary or capricious. *Gross v. United States, supra,* 205 Ct.Cl. at 618, 505 F.2d at 1279. Whether a decision is arbitrary or capricious or constitutes an abuse of discretion is deemed a question of law. Thus, the court can review, in this very limited fashion, the administrative determination in question. *Gross v. United States, supra; see also Pettersen v. United States*, 10 Cl.Ct. 194, 197–98 (1986).

### —B—

The court now turns its attention to the parties' cross-motions for summary judgment. Plaintiff's attack on DASCO's decision is two-fold. First, plaintiff asserts a procedural error which it claims taints the entire administrative process. Second,

plaintiff faults the skimpy nature of the DASCO decision. Defendant, for its part, supports the DASCO decision as correct in all respects.

### 1. *Procedural Error*

In its motion, plaintiff asserts that DASCO's decision was arbitrary and capricious because there was no evidence that Manwell had filed his county committee "appeal" in a timely manner. It would seem, given the language of the regulations, that plaintiff is really attacking Manwell's "request for reconsideration" at the county level. *See* 7 C.F.R. § 1780.3 (1986). In other words, plaintiff asserts that the alleged failure of Manwell to act in a timely manner at the county level infected all further determinations, right up to the DASCO level.

Plaintiff's contention is as follows. Plaintiff considers the March 25, 1983, acknowledgement of his application for PIK participation as a determination of his entitlement to participate in said program. Under the regulations, Manwell had 15 days to appeal that determination. Since Manwell did not appeal this determination until June 21, 1983, this appeal, plaintiff argues, was untimely and thus should not have been considered by the county committee, the state committee or DASCO.

Plaintiff claims that documents he received on March 25, 1983, included a "letter of determination." This, he claims, was the date on which the county committee "determined" he was eligible for PIK participation. Defendant, asserts that it was not until the county committee's regular meeting of June 7, 1983, that plaintiff's eligibility was determined. Manwell requested a reconsideration of the county committee's determination by letter dated June 21, 1983. This request was within 15 days of the meeting of June 7 but well beyond 15 days after March 25. Therefore, establishing the date of determination is crucial in ascertaining whether Manwell's request was filed within the time period set forth by 7 C.F.R. § 780.6(a).

The regulations are silent as to what constitutes an original "determination."

The documents received by plaintiff on March 25, 1983, were a copy of his PIK bid and an attached form letter. Nowhere did these documents state that the county committee had made a "determination" that plaintiff was eligible for PIK participation. On the other hand, the minutes of the county committee's June 7, 1983, meeting specifically stated that plaintiff was "determined" eligible for PIK participation. It is also at least implicit in the county committee's actions that it viewed the June 7th decision to be a "determination" because it was on that date that it notified plaintiff and Manwell about their right to request reconsideration of such determination.

Furthermore, at no time did the state committee or DASCO, higher review levels, find that the reconsideration motion had been filed more than 15 days after the county's original determination. The absence of such a finding supports the view that the June 7, 1983, action by the county committee was the proper "determination" date. Indeed, plaintiff never complained about this appeal time matter until it filed suit in court. It never presented the matter to any of the agency levels of authority, a matter to be discussed later.

■ Given the above facts, the agency decision in issue cannot be set aside under the very limited scope of review which controls this case. It surely was not arbitrary or capricious, nor does it reflect an abuse of discretion for the various decisional levels to consider the appeals lodged with them by Manwell and later by plaintiff. Such an administrative decision need not be the only reasonable decision, or one the court would have reached. *Nabisco Inc. v. United States*, 220 Ct.Cl. 332, 340, 599 F.2d 415, 418 (1979); *Port Authority of St. Paul v. United States*, 193 Ct.Cl. 108, 120, 432 F.2d 455, 461 (1970). There must simply be a rational basis for the determination reached. *Id.* Under these standards the meeting of June 7, 1983, can reasonably be viewed as the date of "determination." Measuring the start of the time period to request reconsideration from June 7, 1983, the meeting date, Manwell's reconsidera-

tion request of June 21, 1983, would be within the regulation's 15 day requirement.

Even if Manwell had filed his request for consideration more than 15 days after a "determination", the county committee was free to reconsider, as they did, its prior determination at Manwell's request. Applicable regulations so provided. If the authority to whom a request is made decides "circumstances warrant" it may accept and act on a request that is not filed within the 15–day time period. 7 C.F.R. § 780.6(c). In other words, the county committee could, at its discretion, entertain a "tardy" request under the appeal procedure set forth in 7 C.F.R. Part 780 (1986). Because of an agency's expertise in its particular field, its discretionary activities are set aside only when the "discretion vested in the agency officials has been abused or is in excess of their authority, or where the result is unsupported by substantial evidence, or is contrary to law or regulation." *Wilmot v. United States*, 205 Ct.Cl. 666, 682 (1974).

The discretionary power of the county committee to hear and act on a request for reconsideration after the 15–day time period further destroys plaintiff's argument. Assuming *arguendo* that the "determination" was made by the county committee on March 25, 1983, under section 780.6(c), the committee's action on the request filed on June 21, 1983, was not improper, illegal, contrary to any statute or regulation or case law. Under the present facts, action on the request does not constitute an abuse of discretion. *See Wilmot*, 205 Ct.Cl. at 682. Simply put, plaintiff is wrong when he claims that failure to file a timely request is "fatal" to the final administrative action taken in this case.

As demonstrated above, there is no factual support for plaintiff's allegation of procedural defect tainting DASCO's decision. From a legal standpoint, there is also no merit to plaintiff's procedural argument.

As stated above, plaintiff argues that the administrative decision was arbitrary and capricious because there was non-compliance at the lower level of a three-tier appeal system with a procedural regulation that provided for a 15–day appeal period to seek reconsideration of an initial decision at the lowest decisional level.

Plaintiff's argument that an appeal is efficacious only when made within the time prescribed by regulations ignores the wide latitude administrative agencies have to consider and/or reconsider their own decisions. Here, plaintiff challenges the county committee allowing Manwell to seek reconsideration of its decision favorable to plaintiff. "It is a well established principle that an administrative agency may reconsider its own decision. The power to reconsider is inherent in the power to decide.'" *United States v. Sioux Tribe*, 222 Ct.Cl. 421, 435, 616 F.2d 485, 493, *cert. denied*, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980); *Yankton Sioux Tribe v. United States*, 446 U.S. 953, 100 S.Ct. 2920, 64 L.Ed.2d 810 (1980), quoting *Spanish International Broadcasting Co. v. FCC*, 385 F.2d 615, 621 (D.C.Cir.1967), quoting *Albertson v. FCC*, 182 F.2d 397, 399 (D.C.Cir.1950). The decision to grant a rehearing lies within the agency's discretion and is precluded only by a clear abuse of discretion. *Sioux Tribe*, 222 Ct.Cl. at 435, 616 F.2d at 493, citing *United States v. Pierce Auto Freight Lines*, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821 (1946). *See also Dayley v. United States*, 169 Ct.Cl. 305, 309 (1965). There was clearly no abuse of discretion by the county committee in reconsidering its own decision.

Plaintiff's challenge to the acceptance by the county committee of Manwell's initial appeal to it and the state committee's acceptance of Manwell's appeal to it of the county committee's determination and DASCO's acceptance of plaintiff's appeal from the state committee's determination is likewise without merit. Assuming that each appeal was outside the pale of regulatory appeal time limits, which was not the case, these appeal bodies would not be precluded from exercising their discretion and considering said appeals. Illustrative of this point is *Tapper v. United States*, 198 Ct.Cl. 72, 458 F.2d 66 (1972). In *Tapper*

the Court of Claims held that the Board of Contract Appeals (BCA) had the power to waive or extend the 30–day appeal period contained in a disputes clause of a government contract. *Id.* at 76, 458 F.2d at 68. *Tapper* supports the view that an agency's own power is not necessarily limited by a regulation or contract clause which establishes a time period in which an individual may act. A regulation which establishes a time limit within which an individual must act simply grants a limited right to the individual. It does not necessarily subtract from the agency's discretionary power to act on a matter brought before it. Like the 30–day appeal period in the standard disputes clause of government contracts, involved in the *Tapper* case, the appeal requirements of the regulations at issue in this case are not deemed to be jurisdictional. *See Maney Aircraft Parts v. United States*, 197 Ct.Cl. 159, 163, 453 F.2d 1260, 1262 (1972).

Regardless of the time period for appeal created by the regulation, the county, state and federal committees and agency had the inherent, discretionary power to consider appeals submitted to them. The 15–day limit placed on an individual's power to seek an appeal in no way detracts from the committee's or agency's inherent discretionary power to consider an appeal. The only limitation on this power is that its exercise not constitute an abuse of discretion. *United States v. Sioux Tribe, supra,* 222 Ct.Cl. at 435, 616 F.2d at 493. The court finds no such abuse in this case.

■ Finally, it is to be noted that plaintiff never presented his untimely appeal argument to any of the administrative bodies in this case. Had he done so, an administrative determination in this regard would have been helpful to the court now called on to consider the agency regulations regarding appeal time limits. Indeed, litigation may have been avoided. *See Aircraft and Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 767, 772–74, 67 S.Ct. 1493, 1500, 1503–04, 91 L.Ed. 1796 (1947); *Martilla v. United States,* 118 Ct.Cl. 177, 180 (1950). Plaintiff's failure to present the timely appeal issue to the various administrative bodies would also serve to justify refusal by the court to consider the issue at this time. It is an issue that could have and should have been presented for administrative determination. Plaintiff has failed to exhaust his available administrative remedy on this issue. *See Pine v. United States,* 178 Ct.Cl. 146, 149–50, 371 F.2d 466, 467–68 (1967).

Plaintiff's claim of procedural error in the administrative process is without merit and must be denied.

—C—

Plaintiff, on the merits, attacks the DASCO decision as arbitrary, capricious and unsupported by substantial evidence. As indicated previously, the court's review, under 7 U.S.C. § 1429, is very limited, *Carruth v. United States, supra.* See also *Hilo Coast Processing v. United States,* 7 Cl.Ct. 175, 176–77 (1985). Indeed, under 7 U.S.C. § 1385 the factual determinations of DASCO are not reviewable by the court. *Gross v. United States, supra.* DASCO's decision, based on its factual determinations, are not subject to review "except as to questions of law, or allegations and proof by the plaintiff that such decisions were arbitrary or capricious. The burden of proof is on the plaintiff to allege and prove that the decisions were arbitrary or capricious [citations omitted]." *Gross v. United States, supra,* 205 Ct.Cl. at 618, 505 F.2d at 1279.

Plaintiff criticizes DASCO's decision for its brevity, charging that the decision "states only bare conclusions without the slightest indication of the facts upon which the decision was based." Plaintiff requests the court to remand this case for development of a "full record."

Plaintiff complains that the present record does not reflect if Manwell filed a timely appeal to the state committee of the county committee decision of July 5, 1983. Plaintiff is in error in this regard. The record does contain a letter dated July 19, 1983, from Manwell to the state committee appealing the county committee's decision

of July 5, 1983. This appeal was therefore timely filed within the 15–day period provided by the regulations (7 C.F.R. § 780.-6(a)). Plaintiff also complains because DASCO presumably did not have before it four documents dated May 13, 1983, June 6, 1983, June 21, 1983 and March 1, 1984, respectively, which plaintiff alleges would have demonstrated that the March 25, 1983, "contract" was really a determination by the county committee that plaintiff was entitled to PIK participation and thus established clearly that Manwell's appeal of June 21, 1983, for reconsideration of the county committee's determination was untimely. There is evidence in the record (plaintiff's August 18, 1983, appeal letter to DASCO) that the first three documents were before DASCO. The timeliness of the appeal issue was discussed and decided in Part B, *supra*. Moreover, the May 13, June 6, and June 21 letters were at or prior to Manwell's reconsideration appeal and thus are deemed irrelevant in any event. The March 1, 1984, document is a letter to plaintiff from the County ASCS urging him to redeem his PIK entitlement to 11,235 bushels of corn stored in Kokomo, Indiana, before the end of the PIK availability period. While not clear from the record, it would seem plaintiff's eligibility for this corn resulted from the DASCO decision which he now challenges. This document is clearly irrelevant to the merits of the DASCO decision.

Plaintiff's basic attack on the DASCO decision is as follows: "Nowhere in the evidence is there any mention of a decision of the agency that the appeal was timely filed, and there is no evidence contained in the record that could lead to such a conclusion." (Plaintiff's brief p. 7.) The short answer is that the appeal was timely and thus no agency discussion of timeliness is plainly understandable. As mentioned earlier, plaintiff never raised untimeliness of appeal as an issue before the agency. That fact should end the matter.

The decision of DASCO is indeed brief. However, the nature of the question in issue did not require much elaboration. The basic facts in this case are that Man-

well was a tenant operator of plaintiff's farm from 1980–82. Plaintiff, the owner of the farm, and Manwell were unable to reach agreement on a rental price to operate the farm during crop year 1983. Plaintiff then applied to participate in the 100 percent PIK program for the crop year 1983 on the 160 acres that Manwell had farmed in 1982. The agency involved determined that plaintiff's farm was not eligible for participation in the 1983 crop PIK program because the number of tenants on his farm in 1983 (none) was reduced in anticipation of or because of participation in the PIK program from the number (one —Manwell) on the farm in 1982.

DASCO made two critical factual determinations. First, it found that the number of tenants on plaintiff's farm was reduced from 1982 to 1983. There is no dispute, nor could there be, about this fact. Second, DASCO found that said reduction in tenants was in anticipation of or because of participation in the PIK program. This fact was disputed before the state and federal levels of ASCS. The state committee and DASCO resolved the dispute with the factual determination set forth above. Under the holding in *Gross v. United States, supra,* such a factual determination is final and unreviewable by this court. Further, such a determination given the record in this case cannot be deemed arbitrary or capricious. The applicable regulations 7 C.F.R. 713.110(2) clearly dictated that, on the above facts, plaintiff's farm was ineligible for PIK participation in crop year 1983. A decision is arbitrary or capricious only when it is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturing Association v. State Farm Mutual,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). The agency decision need only have a rational basis. *Nabisco Inc. v. United States, supra,* 220 Ct.Cl. at 340, 599 F.2d at 419. It does not have to be the same one the court would have made. *Id.*

There is sufficient evidence in the administrative record to support a rational deter-

mination that Manwell was eliminated as a tenant so that plaintiff could sign up for PIK. The PIK program was first introduced for the 1983 crop year. Manwell had farmed F–603 (plaintiff's farm) for 3 years prior to 1983. He fall plowed F–603 in 1982 in preparation for farming in 1983. Manwell attempted to come to terms with plaintiff on the rental payment for 1983. However, he said that plaintiff refused to give him a price. Manwell stated that it had been his farming over the past 3 years that had brought F–603 up to a level where it was eligible for PIK participation. He felt that now that F–603 was eligible for PIK, plaintiff was attempting to squeeze him out and cash in on all his work.

Plaintiff maintained that the parties simply could not come to terms. He seemed to at least imply that the reason no 1983 agreement was reached was because Manwell was experiencing financial problems, citing Manwell's bankruptcy, and could not afford to rent F–603. Plaintiff insisted Manwell left the farm voluntarily; Manwell denied this assertion.

■ Working with the facts outlined above, both the state committee and DASCO determined that Manwell was improperly eliminated. To a certain extent the determination must have boiled down to a "swearing match" between the two parties. Obviously, Manwell's version of the facts was accepted over plaintiff's. The general rule when reviewing a record in which conflicting evidence exists is for this court to defer to the administrative finding. *Burke v. United States*, 230 Ct.Cl. 853, 856–57 (1982). This rule should be applied to the present case. Although there is no verbatim recorded transcript of testimony, the record shows that plaintiff's and Manwell's positions were presented at the state and federal administrative levels. Both plaintiff and Manwell appeared before the state committee at a hearing to present their positions and plaintiff again presented his position to DASCO via a telephonic hearing. There is no evidence in the record that Manwell was part of the DASCO telephonic hearing. Reaching a decision must have been based, to some extent at least, on the credibility of each party under the circumstances of the disagreement and anomosity between plaintiff and Manwell. The court should defer to an administrative determination under such circumstances as exist herein unless it is improbable or discredited by undisputed testimony. *See Burke v. United States, supra,* 230 Ct.Cl. at 856–57.

■ The factual determination that plaintiff violated the landlord-tenant provisions of the PIK program by displacing Manwell as a tenant has support in the record and, after giving consideration to the entire record, passes the muster of limited judicial scrutiny. The determination that Manwell had been eliminated as a tenant improperly cannot be viewed as arbitrary and capricious. The evidence would tend to show that after 3 years of agreed upon rentals plaintiff forced Manwell off a farm, which had become PIK eligible, in order to participate in PIK. The court need express no opinion as to what decision it would have arrived at. It simply finds that the administrative decision was certainly rational and supported by the evidence before the state and federal administrative bodies. *Nabisco Inc. v. United States, supra,* 220 Ct.Cl. at 340, 599 F.2d at 419; *Hilo Coast Processing v. United States, supra,* 7 Cl.Ct. at 177.

Plaintiff in its submissions to the court failed to carry its burden of proving that the DASCO decision was arbitrary or capricious. *See Gross v. United States, supra,* 205 at 618, 505 F.2d at 1279.[6]

---

**6.** Indeed, while ruling against plaintiff relative to PIK participation in 1983, DASCO provided equitable relief to plaintiff, since he was left without either PIK program participation or a tenant, because of plaintiff's reliance on the county committee's holding that plaintiff was entitled to participate in PIK. Further, plaintiff was not to be considered as the 1983 operator of the farm for the purpose of future farm programs, which was ostensibly beneficial to plaintiff. Such equitable consideration of plaintiff supports the reasonableness and rationality of the decision by DASCO and hardly supports an arbitrary and capricious view of said decision.

## IV.

Based on the foregoing, defendant's motion to dismiss and plaintiff's motion for summary judgment are denied. Defendant's motion for summary judgment is granted, with plaintiff's complaint to be dismissed.[7]

No costs are to be assessed.

---

7. Plaintiff has requested alternative forms of relief. However, since the court has determined plaintiff is not entitled to any relief, it is not necessary to address these requested alternative forms of relief.