**MONROE M. TAPPER AND ASSOCIATES**

v.

**The UNITED STATES.**

No. 329–70.

United States Court of Claims.

April 14, 1972.

Alan V. Washburn, Washington, D. C., for plaintiff. F. Trowbridge vom Baur, Washington, D. C., attorney of record.

Michael J. Rubin, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray, III, for defendant.

Before COWEN, Chief Judge, and DAVIS, COLLINS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

DAVIS, Judge.

This is another controversy in which a Board of Contract Appeals has dismissed as untimely an appeal from a contracting officer's decision, and relief is sought from this court. In 1968 plaintiff Monroe M. Tapper and Associates agreed with the then Post Office Department to construct and lease to the Department a Post Office and Vehicle Maintenance Facility in Worcester, Massachusetts. The Tapper group, which constituted the prime contractor but appeared to have been mainly interested in the leasing phase of the arrangement, subcontracted all the construction work to Granger Contracting Company as general contractor. The prime contract embodied the usual disputes mechanism, allowing 30 days after receipt for an appeal to the Postmaster General from a final decision of the contracting officer.

In the course of performance, Granger disagreed with C. W. Buckley, Inc., the defendant's architect-engineer, over whether gravel should be used for certain backfill. The position of the architect-engineer was that gravel was demanded by the contract; Granger considered the item an extra for which it should be reimbursed under the Changes clause. When the controversy could not be resolved, Granger asked the contracting officer for a formal "final decision". This was forthcoming on December 23, 1968, and was sent to Mr. Tapper's office in Minneapolis, Minnesota, without any copy being furnished to Granger in

Worcester. Appeal was not taken by Tapper until February 25, 1969. The Government moved before the Post Office Department Board of Contract Appeals to dismiss the appeal as too late.

The Board found—and this finding, which is based on ample evidence, is unchallenged in this court—that the contracting officer's decision was actually received by Tapper's office on or before January 16, 1969. Mr. Tapper testified that he went to Arizona for a vacation at Christmas-time 1968 and returned to Minneapolis in the second or third week of January 1969; the contracting officer's final decision was delivered to his office during his absence; it was apparently misfiled by his secretary and he did not see or know about its arrival until June 1969 after he had made a diligent search in connection with the motion to dismiss the appeal; and he sent his appeal notice of February 25, 1969 after Granger informed him on February 20th that a final decision had been rendered and prompted him to appeal. On this and other evidence, the Board found that the notice of appeal was untimely and dismissed the appeal on that ground.

Before us, plaintiff barely challenges the holding that the appeal was technically late—as it was. The Tapper group, though Mr. Tapper took a strange view of his role as prime,[1] remained the contractor with which the Government had made its agreement. There was no formal substitution of Granger and the Board permissibly found that neither Tapper nor Granger was led by the Government into the be-lief that Granger could handle the appeal all by itself, without the prime's participation. There was, for instance, undisputed testimony that Granger was told by a post office representative that claims under the disputes article for more than $2,000 should be submitted through Tapper, and that Tapper should take the appeal "in the case of a negative decision from the Contracting Officer."

■ The major theme of the petition and of plaintiff's argument is, first, that the Board had power to enlarge the appeal-period and waive the lateness of the filing, and, second, that that is what should have been done in this instance. We need not linger over the first point. The court has recently reaffirmed the rule that Boards of Contract Appeals have power, in proper circumstances, to waive or extend the appeal period specified in the usual disputes clauses. Maney Aircraft Parts, Inc. v. United States, 453 F.2d 1260, 197 Ct.Cl. —— (1972).[2] Cf. Schacht v. United States, 398 U.S. 58, 63–65, 66–69, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970). The Government's rights under the clause do not "vest" until the Board refuses to take jurisdiction because of untimeliness. Thus, if the Board does take jurisdiction, it is not waiving a vested right because the right does not vest until and unless the Board refuses to take jurisdiction. If it awards relief, the disbursing officer can take comfort in the fact that he is not waiving a vested right.

The plaintiff's contract is garden variety in this respect, and the Post Office Board possessed full waiver authority.

---

1. The Board found:
 "The facts found herein make it clear that Appellant, in the person of Mr. Tapper, adopted the view that after he was awarded the contract by the Post Office Department (Respondent) and after he entered into the subcontract with Granger, Appellant's role, at least on construction matters, was almost that of a bystander. Whatever construction problems arose were, according to Appellant's Tapper, to be handled by Granger whose construction work was generally authorized or approved by Appellant. Appellant's only function, in the eyes of Mr. Tapper, was to pay bills and make occasional calls to Respondent's Mr. Trich."

2. In addition to *Maney Aircraft* and this court's decisions cited in that opinion, see Burnett Constr. Co. v. United States, 186 Ct.Cl. 953, 954 (1968), and Arthur Venneri Co. v. United States, 381 F.2d 748, 751 n. 3, 180 Ct.Cl. 920, 925 n. 3 (1967).

After *Maney*, the only real issues in this case concern the possibility of waiver of the strict time-for-appeal.

 Plaintiff's position is that a waiver must be accorded, and the appeal period enlarged, unless the Government can show prejudice from such enlargement. We cannot accept that as the sole and exclusive criterion. First of all, the burden should not be on the defendant; the contractor, which failed to comply with the requirement that an appeal be filed within the specified period, must persuade the tribunal that in the particular circumstances a waiver would be warranted. It is normal to ask that some good cause be shown by an applicant seeking extension of a waivable time-limit for appeal. See, *e. g.*, Schacht v. United States, *supra*, at 64, 67, 90 S.Ct. 1555.5. Secondly, prejudice to the Government is of course an important factor but the contractor's own responsibility should not be disregarded. As in most instances where a discretionary waiver of a specific time-limit is involved, carelessness or neglect on the part of the applicant is relevant, though it may not be conclusive. Plaintiff's contrary rule would undermine the integrity of the appeal period and remove an essential goad to the filing of timely appeal notices. Laxity on the part of contractors would be greatly encouraged. In exercising its discretion whether or not to waive a contract time-limit, a contract appeals board (or similar tribunal) must be able to weigh all elements, including the conduct of both the Government and the contractor.

 Although we disagree with the narrow standard plaintiff proposes, we feel, as in *Maney Aircraft, supra*, that this contractor should be permitted to apply to the Board for consideration, or further consideration, of a discretionary waiver because the course of the defendant's dealings with Granger may have induced Granger (and Tapper) reasonably to believe that Granger would promptly receive a copy of the contracting officer's final decision—and thus enable Granger to set in motion a timely appeal by the prime. Without attempting to summarize or weigh all the pertinent evidence in the existing record, we point out several circumstances on which plaintiff relies. Tapper left almost all of the dealings with the Government, with respect to construction, to Granger—see note 1, *supra*—and the communication between Granger and the defendant (including Buckley, the architect-engineer) was extensive, continuous, and routine. In particular, on the backfill dispute (here involved) the relations were wholly between Granger and the Government, without any participation by or notification to Tapper up to Granger's request for a final decision by the contracting officer. When Granger first made that request, the Post Office told Granger to resubmit the request "to proper channels", and indicated that, for an item of more than $2,000, the formal request should be submitted from the contractor (Tapper) through the architect-engineer (Buckley) to the Department. Granger, however, did not involve Tapper at that stage but itself resubmitted a letter, through the architect-engineer, seeking a final decision; a copy was sent to Tapper (this was his first connection with the dispute). This Granger letter expressly asked that the Department "advise *us* of the final decision" (emphasis added). The Government did not reject the request from Granger because it was not forwarded by Tapper, but proceeded to consider it on the merits. Granger's representative testified that, with this background, Granger reasonably believed that it would at least receive a copy of the final decision as soon as it was issued.

Nevertheless, no copy of that decision was ever sent to Granger, and when Granger seasonably asked Tapper (on February 3, 1969) if he had received the decision the answer was in the negative (because Tapper was then unaware that his secretary had received and misfiled the document). Likewise, Buckley, the architect-engineer, received no copy of the final decision until February 3, 1969, and therefore told Granger, on inquiry before that time, that he had not

received the ruling. The fact that a decision had actually been made first came to the attention of Buckley and Granger on February 3rd.

Granger explains the delay in filing an appeal (it did not ask Tapper to appeal until February 20th) on two grounds. One was Granger's confusion resulting from the nature of the two copies of the final decision which it saw on or shortly after February 3rd. The first of these papers was apparently an "office copy" containing office "concurrences", and there was some confusion as to the date of the letter; the Granger testimony was that, for this reason, the subcontractor's people questioned whether an official letter had ever been sent by the Department. The other factor said to enter into the delay was Tapper's insistence on February 3rd that he had not received any final decision.

We believe that there is enough in these circumstances to call for an assessment by the Board of whether it should waive the 30-day time-limit. Plaintiff urges that (i) we ourselves find that the defendant led Granger reasonably to believe it would receive a copy of the final decision and then failed to follow through, and (ii) we hold that the defendant was entirely or mainly responsible for the untimeliness of the appeal. We decline to make that finding or ruling. The existing record is not so clear that the Board could reach only a result favorable to plaintiff. Moreover, the plaintiff stresses in its briefs that there was no adequate hearing before the Board on the various equities of the situation; it is appropriate, therefore, to remit the entire problem to the Board so that it can decide whether to exercise its discretion to the contractor's advantage.

The Government, on the other hand, urges that the Board has already considered whether to extend the appeal time-period and has chosen to exercise its discretion against plaintiff. There is no suggestion of such discretionary consideration in the Board's original opinion; on the contrary, the Board said there that it "closely adheres" to the "well-settled rule * * * that a delay of more than 30 days after receipt of the Contracting Officer's final decision in filing a notice of appeal requires that the attempted appeal be dismissed", and later the opinion specifically rejected, among other points, the argument that the Board has the discretionary power to waive the 30-day requirement.

In its opinion on reconsideration, the Board did say: "This Board is well aware that factual circumstances sometimes exist that affect the relationship between the parties in such a manner that rigid and indiscriminate adherence to the 30-day provision of the disputes clause becomes inappropriate and unjust. However, we find no such circumstances present here." For two reasons, we do not accept this as an adequate consideration of the problem. We are far from sure that the Board did exercise any discretion, despite the excerpt we have quoted, since the opinion on reconsideration repeats and approves the incorrect holding by the Armed Services Board of Contract Appeals in Maitland Brothers, ASCVA, No. 6607, 66–1 BCA ¶ 5416 (1966), that a board has no power to waive the contractual period for appeal.[3] Moreover, even if discretion was exercised, it is clear that the Board focused solely on the conduct and responsibilities of Tapper, not considering Granger's interests or position at all.[4] Although Tapper, as the prime, is the proper and necessary plaintiff and the named contractor, Granger is obviously the real party in interest, except in the formal and

3. The opinion or reconsideration also "affirms in all respects [the Board's initial] Opinion and Order dismissing with prejudice this appeal as untimely"—and, as already noted, that first opinion went squarely on the ground that the time-limit could not be waived.

4. The Board characterizes Tapper's actions with respect to receipt of the final decision and the failure to take a timely appeal as resulting from "gross carelessness" and "sheer carelessness". Neither of the Board's opinions casts any reflections on Granger, and neither considers the equities with respect to Granger.

technical sense. When purely legal rights are being appraised, such as the timeliness of the appeal, the defendant can rightly insist that the notice had to be filed in Tapper's name and the time began to run when Tapper received the contracting officer's decision. But when the equitable concept of discretion-to-waive is invoked, all the pertinent circumstances must be evaluated, including Granger's role vis-a-vis the Government and the Government's conduct toward and dealings with Granger.

The defendant argues that the Board must have considered Granger's role and position when it said (on reconsideration) that Tapper "was not, directly or *indirectly*, lulled by any conduct of the Government into the failure to timely file an appeal" (emphasis added), but this slight reference to an "indirect" effect on Tapper is too obscure to suggest that the Board was holding that Granger was not itself lulled into inaction by the Government's failure to send it a copy of the final decision. In any event, as already indicated, plaintiff is entitled to present further evidence on that point, if it desires.[5]

For these reasons, as in Maney Aircraft Parts, Inc. v. United States, *supra,* we order that the proceedings herein, including action with respect to the parties' motions for summary judgment, be suspended for a period of ninety (90) days pending plaintiff's further pursuit of its administrative remedy through a possible discretionary waiver, by the appropriate board, of the contractual time-limit.

NICHOLS, Judge (concurring).

I join in the foregoing opinion of the court and add the following: This is our third Wunderlich Act 30-day filing case for 1972, the others being Maney Air-craft Parts, Inc. v. United States, 453 F.2d 1260, 197 Ct.Cl. —— (1972); and Roscoe-Ajax Constr. Co., Inc. v. United States, —— Ct.Cl. ——, 458 F.2d 55; and two more 1972 Wunderlich cases involving different notice requirements may be added: Hoel-Steffen Constr. Co. v. United States, 197 Ct.Cl. ——, 456 F.2d 760 (1972); International Tel. & Tel. Co. v. United States, 453 F.2d 1283, 197 Ct.Cl. —— (1972). For prior decisions, see cases cited in Judge Davis's fn. 2 and cases cited in those cases. Thirty day filing requirements could easily be the commonest kind of Wunderlich Act dispute. It appears to me that the repeated necessity of adjudicating such sterile controversies calls into play the Chief Justice's admonitions for lawyers and judges to co-operate in eliminating wasteful use of lawyer power and judge power. Here, we have no great reason to believe Judge Davis's careful analysis will contribute anything to the ultimate disposition of the case. We seem to have got into this latest round via our holding that failure to file an appeal on time could be waived if the Board considered the appeal on the merits. Burnett Constr. Co. v. United States, 186 Ct.Cl. 953 (1968), in which defendant repudiated its own concession in the trial tribunal. Defendant's position in that case, if sustained, would have stripped the Boards and defense counsel before the Boards of power to do this, as long as the Disputes Clause language remained unchanged. It is evident that untimely appeals are likely to occur. Few lawyers *never* have to ask for extension of time to file a paper in court, or for permission to file it late. If *bona fide* disputes cannot be resolved in the intended and agreed upon manner, because of a minor procedural lapse anyone may be guilty of, no one will benefit in the long run.

---

5. The Board's hearing was expressly restricted, by a pre-hearing order, to "testimony and any significant exhibits relevant to the question of whether by reason of the relationship existing among the parties as implemented by any conduct and understanding of the Post Office Department with Tapper, Buckley and Granger, sub-contractor Granger had 30 days after Granger received the final Post Office Department decision to take the appeal in the name of the prime (Tapper) or otherwise." This order also referred to the possible applicability of Portland Machine Tool Works, Inc., ASBCA, No. 4143, 58–1 BCA ¶ 1604 (1958).

The *Shacht* case, cited by Judge Davis, stimulates reflection. The Justices decided, over three dissents, in a deserving case, to waive the 30-day requirement of *their* own rule as to *certiorari* petitions. *Certiorari* petitions are often used by unsuccessful litigants for delay. Such petitions seek review that must be denied to most petitioners, and thus it is reasonable to demand that the successful ones turn square corners. I ask whether the Disputes Clause 30-day provision has equally strong reasons looking toward its undeviating maintenance. What evil is averted if an appeal filed in 31 days is not heard on the merits? I think any rule of law, any regulation, is better interpreted and applied if this sort of question is asked and answered. I am not in a position to answer it and do not do so here.

This is the sort of pettifogging controversy that causes intelligent people to prefer other careers over service on the bench. If the Boards cannot find a rational and workable line under the existing clause, it is to be hoped the mysterious processes that generate standard Government contract clauses may be set to work to gestate a substitute or amendment.