NICHOLS, Senior Circuit Judge.
 

 The Department of Agriculture Board of Contract Appeals rejected two claims for equitable adjustment, Nos. 77-142-4 and 78-108-4, 83-1 B.C.A. If 16219, under a contract awarded in 1976 for construction of a two compartment, walk-in cold chamber. These decisions were subject to the Wunderlich Act, 41 U.S.C. §§ 321-322, and not to the Contract Disputes Act, 41 U.S.C. §§ 601-613. Therefore, to obtain judicial review, appellant, Vista Scientific Corp., sued under the Tucker Act, 28 U.S.C. § 1491, in the Claims Court. That court conducted a Wunderlich Act review, as explained hereinafter and, on cross-motions for summary judgment, it affirmed both rejections. Vista appealed to this court and we affirm the decision of the Claims Court.
 

 Discussion
 

 That the Claims Court, normally a trial tribunal, should be performing an appellate
 
 *51
 
 function in this case, may appear anomalous and should be explained.
 

 The former Court of Claims had jurisdiction under the Tucker Act, over government contract money claims both for breach, and for relief under the contracts in the form of equitable adjustment. In
 
 United States v. Wunderlich,
 
 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113 (1951), the Supreme Court held that procurement agencies could preclude judicial review of their decisions relating to contract disputes, except as to fraud issues, by exacting the contractor’s acquiescence in contract clauses making agency board’s decisions final both as to fact and law. This result was not deemed desirable by Congress, which enacted the Wunderlich Act, so called, to overturn the decision above cited of that name. Under the terms of this Act, board decisions could be accorded no finality on questions of law, but findings could be made final as to fact issues so far as supported by substantial evidence and not arbitrary or capricious, etc., and thus the statute restored a significant role to the Court of Claims.
 

 Under the Wunderlich Act, the Court of Claims at first received testimony additional to that in the board record, determining whether board findings were supported by substantial evidence by weighing the findings against both record testimony and that newly taken. In
 
 United States v. Carlo Bianchi & Co.,
 
 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963), the Supreme Court construed the Wunderlich Act to restrict the Court of Claims to a purely appellate function in disputes clause cases. The court could remand to the board for further testimony, if needed, but could not take any itself, nor make any fact findings.
 

 The Court of Claims at that period, besides the Presidentially appointed article III judges, included several persons called “commissioners” in the rules; later they were called “trial judges” and, collectively, the court’s “trial division.” The
 
 Bianchi
 
 decision appeared to eliminate any function for these commissioners to perform as to most contract disputes clause cases, for they were primarily takers of testimony and fact finders. However, the judges, having found the commissioners’ services of value, were reluctant to dispense with them, and a way to utilize them was found. The rules were amended for Wunderlich cases only, Ct.Cl.Rule 163(b), to provide that in such cases both parties should file motions for summary judgment, which motions were referred to commissioners for advisory or recommended opinions. That there was no fact issue requiring trial was a conclusion forced by
 
 Bianchi.
 
 The commissioners usually reviewed the records, received briefs, and heard oral arguments. In other than Wunderlich cases, cross-motions for summary judgment went before the article III judges with no participation by the commissioners. In Wunderlich cases, the recommended opinion of the commissioner was, unless acquiesced in by both parties, considered on exceptions, oral arguments, and new briefs by the article III judges.
 

 The Contract Disputes Act of 1978 altered Wunderlich procedure in several ways. A contractor dissatisfied with a contracting officer’s decision, could file a suit and have his trial with the court, bypassing the agency boards. If, however, he preferred the board route, the board decision was treated as a trial level decision; the function of the court being to accord appellate review, clearly a function of the article III judges and not of the trial division. It was no longer, in form, a Tucker Act suit. The boards also obtained jurisdiction of breach claims. The effective date provisions of the Contract Disputes Act of 1978 were such as to leave a number of cases of contract disputes in the pipeline to be governed, not by it, but still by the Wunderlich Act unchanged. They crop up from time to time and the instant case is one of them.
 

 The Federal Courts Improvement Act of 1982 created the Claims Court, whose original judges were for the most part “grandfathered” former Court of Claims commissioners. It succeeds in many respects the “trial division” of the former Court of Claims. Suits under the Tucker Act, if
 
 *52
 
 pending in the trial stage, were transferred there. Since no legislation provides for judicial review of determinations made under the Wunderlich Act, except the Tucker Act, it follows that new petitions for review of Wunderlich cases had to be filed in the Claims Court under that Act. Yet, that court is still precluded by the
 
 Bianchi
 
 case from conducting trials, and its function in Wunderlich cases is of necessity purely appellate. In view of the very different disposition made by the statutes respecting board decisions in Contract Disputes Act cases, the disposition of Wunderlich cases is so anomalous, it reflects possible inadvertance on the part of Congress, or a sense that Wunderlich cases were, or else soon would be, so few that legislation respecting them was not needed. At any rate, after a board decides a Wunderlich case, facts and law, there ensue since 1982 two stages of appellate review, Claims Court and here, both functioning as appellate tribunals barred from reopening or redetermining the facts. Board findings not supported by substantial evidence can be overturned, but no such findings are pointed out here. That is, appellant does not identify board findings not supported by substantial evidence, so the alleged errors here are purely errors of law. In a suit in a district court under the “Little Tucker Act,” 28 U.S.C. § 1346, a Wunderlich Act review would be similarly restricted.
 

 For us, functioning as the second stage of appellate review, our role normally would be to determine whether the Claims Court decided correctly the legal issues the unassailed fact findings present, including substantial evidence issues, where present. But we cannot forget it is the board decision which is the subject of Wunderlich Act review.
 

 We agree with the Claims Court that the board interpreted the contract correctly and correctly found it unambiguous. The assertions to the contrary, by appellant here, are infected by its repeated reliance on facts the board did not find. The Claims Court, on the other hand, derived from the record, and not from board findings, what it took to be an admission by appellant’s president, in his testimony, that he was aware of an ambiguity in the contract when he bid; of course, a contractor’s awareness of an ambiguity would generate a duty to inquire, which the president did not do. Counsel here argues he meant he saw an option to perform in two ways, not an ambiguity. Assuming it was error of the Claims Court to bolster its conclusion with facts the board did not find, and whose significance is controverted, the error was harmless because the contract was unambiguous as held by the board, the Claims Court, and by us. The board also held that if the contract was ambiguous (as it was not), the ambiguity was patent and appellant had a duty to inquire, which it did not do. It did not find appellant was aware of or supposed the contract was ambiguous.
 

 The first dispute relates to the walls of the — 35°F chamber. The contract, as amended before bid opening, says in part that insulation shall be “rigid urethane foamed in place not less than four inches (4") in +28°F chamber and not less than eight inches (8") in —35°F chamber. * * * Insulation shall be 1 piece urethane foamed in place * *
 

 Appellant took the position it could furnish 8" wall panels with a laminate of two 4" panels. This would have been cheaper, as 4" panels were standard commercial items. We agree with the court below and the board that such an interpretation of the contract language is untenable. There is a lot more said about this issue in both decisions below, but we need not discuss it further, having considered the matters brought up and discussed and found nothing refuting the above conclusion.
 

 The second dispute arose out of the fact that the contractor was to deliver and install the cold chamber on a concrete pad on government premises. This pad was not exactly level, but sloped, and responsibility for leveling was not spelled out in the contract as such. The slope was
 
 Vs"
 
 to the foot, not visible to the naked eye, and ap
 
 *53
 
 pellant bid unaware of it. Appellant attempted to install without leveling, but gaps were left which would have had to be caulked, panel joints did not match, and seams were uneven. The contracting officer ordered the contractor to level the chamber. The board found that leveling the type of chamber in issue was an important and common part of the chamber erection process. The board found the contractor should have checked the pad for levelness, as it was common industry practice to do. The contract provided the covered work included all labor and services necessary for furnishing and installing all items according to the specifications and drawings and it read: “The contractor shall be solely responsible for the manufacture, installation, and warranty of the chamber.”
 

 The board is not explicit on what part of this contract it relies on in denying the claim, but the above provisions are the ones it quotes. We think its implicit interpretation of the contract is correct.
 

 The Claims Court refers to the incompleteness of the record before it, to the reliance of the appellant on material not before the court, and to appellant’s failure to substantiate by means the Wunderlich Act allows its attack on the board’s decision. It must be borne in mind that the case was before the court on cross-motions for summary judgment. To obtain judgment in its favor, appellant had to show that the board was wrong; argument and assertion on the facts would not suffice. It either had to show the board’s facts were not supported by substantial evidence, which it made no effort to do in a proper way, or that the board was wrong on the law. On summary judgment, if appellant wanted to show board findings were not supported by substantial evidence, it should have identified the findings and backed up its motion with whatever record excerpts or documents were needed to support its position. Before us it still argues facts without showing any relationship between them and board findings. We cannot find reversible error in the Claims Court’s handling of this issue which avoids direct interpretation of the contract, and simply holds the appellant has not made the showing required for summary judgment in its favor under Claims Court procedure.
 

 Similarly, appellant has failed to persuade us of reversible error in the board’s decision under the Wunderlich standard of review.
 

 Conclusion
 

 We affirm the judgment of the Claims Court.
 

 AFFIRMED.