**TOWN CENTER MANAGEMENT CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 720–87C.

United States Claims Court.

July 21, 1989.

Marion Edwyn Harrison, Washington, D.C., for plaintiff.

Carolyn E. Galbreath, with whom were Asst. Atty. Gen. John R. Bolton, David M. Cohen, Director, and Mary Mitchelson, Asst. Director, for defendant.

## OPINION

SMITH, Chief Judge.

In this Wunderlich Act review case the court is presented with the question of whether the GSBCA properly dismissed plaintiff's claim "for lack of jurisdiction for failure to file within the time allowed." *Town Center Management Corp.* GSBCA No. 8319, 87–1 BCA (CCH) ¶ 19,640, at 99,-419 (1987). For the reasons given below, the court reverses the Board's decision and remands this case for further consideration consistent with this opinion.

## FACTS

The claim here arose under a lease between GSA and plaintiff Town Center Management Corp. (TCM). The contract was entered into on August 16, 1971, and expires on September 13, 1992, unless renewed. The lease contains the usual version of the pre-CDA disputes clause, which reads:

> Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the contracting officer, who shall reduce his decision in writing and mail or otherwise furnish a copy thereof to the lessor. The decision of the contracting officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy the lessor mails or otherwise furnished to the contracting officer a written appeal addressed to the head of the agency involved. The decision of the head of the agency or his duly authorized representative for the determination of such appeals shall be final and conclusive. This provision shall not

be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review of any such decision to cases where fraud by such official or his representative or board is alleged. Provided, however, that any such decision shall be final and conclusive, unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessary to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the contractor shall proceed diligently with the performance of the contract and in accordance with the contracting officer's decision.

The lease also contains an operating cost escalation clause providing for the adjustment of annual rents based upon operating experience during fixed periods (e.g., 1, 3, or 5 years). Pursuant to this clause TCM submitted to GSA an expense escalation proposal of $2,531,525 which covered 484,-144 square feet of the total leased space. The proposal was for projected costs for the base lease year commencing on September 14, 1982. The GSA field officer (referred to hereinafter as the Contracting Officer or CO) disallowed $1,612,620 of the $2,531,525 by the letter dated January 25, 1985. The CO also attached a proposed supplemental lease agreement, Number 47, to the disallowing letter and asked TCM to execute it if it were acceptable. The amount of cost escalation allowed in proposal Number 47 was the final decision of the CO. The letter also noted that the decision was issued pursuant to the disputes clause and that TCM had 90 days to appeal to the Board or a year to appeal to the Claims Court. The CO, although noting that the appeal could be completed by letter, did not include the standard appeal form with the final decision.

On January 29, 1985, TCM received the CO's letter and proposal Number 47. And on January 31, 1985, Mr. Charles Bresler, the president of TCM, wrote to the CO:

We have received your letter of January 25, 1985, and Supplement No. 47. We cannot agree with your letter, its rationale, the GSA auditor or the supplement you submitted.

Your letter failed to include the Forms 2465, Notice of Appeal. We have called your office requesting that the forms be sent to us in order that we might note the appeal.

However, prior to filing of the appeal and in an effort to exhause [sic] our remedies we would appreciate a meeting with you as contracting officer in order to attempt to resolve this matter and put forth our position.

The requested meeting was held on February 13, 1985. The meeting was attended by two TCM executives, the CO and two GSA auditors. The GSA representatives explained the audit procedure and the reasons for their conclusions, while TCM presented "detailed calculations, billings, contracts and the information to justify" the proposal. TCM also offered a compromise in the disputed portion of the escalation request. According to plaintiff, the parties ended the meeting with an oral promise that GSA would review the additional material and contact TCM if there were any questions. Also, according to plaintiff, telephone calls between TCM and GSA were periodically exchanged.

On July 30, 1985, TCM again wrote to the CO arguing the validity of the cost escalation proposal. The letter also noted that TCM had offered to "compromise on the operating cost portion of the escalation at our last meeting." No response to the letter was forthcoming. Thereafter, on September 21, 1985, TCM received a check in the amount of $585,672,45, with no explanatory letter, in payment of invoice No. L0578885. On October 18, 1985, TCM again wrote to the CO and stated that the assumption was that the check was in response to the July 30, 1985, letter. TCM then requested a summary of the payments represented by the check. TCM received a reply from GSA in an October 30, 1985, letter stating that the check represented the undisputed portion of the operating

costs escalation.[1] TCM then replied on November 4, 1985, and requested GSA to send a copy of proposal Number 47 and forms for appealing the CO's January 25, 1985, decision. The letter stated additionally that, "subsequent conversations and correspondence since that date had not indicated that the Contracting Officer's decision was final this past January."

TCM wrote again on November 25, 1985, asking for the information referred to in the November 4, 1985, letter. On December 4, 1985, the CO wrote a letter disputing TCM's contention that the January 25, 1985, decision was not final. The CO also enclosed the appeal form. Thereafter TCM mailed a notice of appeal on December 20, 1985, which was received by GSA on January 3, 1986, 343 days after the January 25, 1985, decision of the CO.

### The GSBCA Proceedings

After receipt of the appeal on January 3, 1986, the GSBCA sent, on February 4, 1986, a letter stating that it was issuing an order to show cause why the appeal should not be dismissed. The order to show cause accompanied the February 4, 1986, letter. TCM then filed, *pro se,* a memorandum and attachments on February 20, 1986, in response to the show cause order. This was followed by an additional memorandum and attachments filed with the Board on March 26, 1986. The GSBCA, by order of March 2, 1987, dismissed the case for failure to timely appeal. A dissent objecting to the dismissal was filed by Administrative Judge LaBella.

### DISCUSSION

#### A. The GSBCA's Equitable Discretion To Waive the appeal period

Because this contract was entered into prior to enactment of the CDA the plaintiff could have, and did, elect to proceed under the disputes clause of the contract. *North American Corp. v. United States,* 706 F.2d 1212 (Fed.Cir.1983). The case then is only reviewable in this court under the Tucker Act with further review in the Court of Appeals for the Federal Circuit and possibly the Supreme Court. *Id.* Review in cases such as this one where the court acts in an appellate capacity is limited to consideration of the record at the Board. There is no occasion for this court in this case to reopen or redetermine the facts. *Vista Scientific Corp. v. United States,* 808 F.2d 50, 52 (Fed.Cir.1986). Further, Board findings of fact can only be overturned if not supported by substantial evidence. *Id.*

▮▮▮ Generally, a CO's decision must be appealed within the thirty day time period provided by the disputes clause. This time for appeal, however, may, at the discretion of the Board, be waived or extended upon a showing of good cause. *Monroe M. Tapper,* 198 Ct.Cl. 72, 77, 458 F.2d 66, 69 (1972); *Maney Aircraft Parts, Inc. v. United States,* 197 Ct.Cl. 159, 453 F.2d 1260 (1972). It is incumbent upon the Board to exercise its discretion when reviewing a request for a waiver or extension of the appeal time due to a tardy appeal under the pre-CDA disputes clause. The exercise of such discretion is equitable in nature and turns upon several factors such as prejudice to the government, the conduct of the parties, and the carelessness or neglect of the contractor. *Monroe M. Tapper,* 198 Ct.Cl. at 77, 458 F.2d at 69. Thus the standard for review is whether the GSBCA abused its discretion or acted in an arbitrary or capricious manner.

Here the Board dismissed the claim for lack of jurisdiction. The Board stated that it was taking all of plaintiff's facts in their response as true, but found, contrary to plaintiff's assertions in its March 26, 1986, memorandum, that the February 13, 1985, meeting did not result in any change in position by the government. Also the opinion states that:

Appellant thereafter met with the Contracting Officer concerning the matter in dispute, but does not state in its response to the show cause order that the Contracting Officer did anything to undermine the finality of that decision, or to

---

1. The record contains no explanation of why the undisputed amount was only $585,672.45. Pre-

sumably the undisputed amount was $918,905 ($2,531,525—$1,612,620).

mislead appellant, as to the Government's intentions in the matter; nor does appellant apprise us of any state of facts which would excuse the filing of this appeal many months after the appeal period had run.

*Town Center,* 87–1 BCA at ¶ 19,640, at 99,419.

This indicates that the Board failed to give any weight to the allegations in plaintiff's March 26, 1986, response to the show cause order. The response clearly says in item five that:

> Said requested meeting was held on February 13, 1985 at 2:00 p.m. at GSA. Present were the contracting officer, Mr. Turowski, Robert Garrison and Noreen Freeman of GSA, Charles Bresler and Philip Friedman of Town Center Management. GSA explained how they arrived at the amounts submitted. Town Center presented detailed calculations, billings, contracts and other information to justify the amounts claimed by Town Center. The meeting recessed with a promise that GSA would review the additional material and contact Town Center if there were any questions or information needed.

Such conflicts between pled facts, taken as true, and the majority's findings indicates that the majority at the Board actually failed to give proper consideration to plaintiff's facts, notwithstanding the statement that they took the facts as true. The response in item five certainly shows one state of facts which could be read to "undermine the finality [of the CO's] decision," "mislead appellant as to the government's intentions," or excuse the late filing of the appeal.

The concurrence written by Administrative Judge Hendley does not help the main opinion. In the view of the concurrence there is nothing unusual about the parties behavior in this case. Judge Hendley stated:

> The contractor's sole purpose in conferring with the contracting officer is to have him reconsider his decision. Just by listening, the contracting officer is, *ipso facto,* reconsidering his decision. If he believes that he has made a mistake, he should change his decision. These actions constitute "reconsideration," but they do not constitute a suspension of the decision or act to toll the running of the appeal period.

> \*    \*    \*    \*    \*    \*

> Under the law governing appeals, which are not made pursuant to the Contract Disputes Act of 1978, this Board may waive an appellant's out of time filing of an appeal on a finding of "inescapable circumstance, unforeseen catastrophe, or extraordinary incident" but not where the appellant's failure is due "to ordinary oversights or neglect." *SWH Co.* DOT CAB No. 72–29, 72–2 BCA ¶ 9570, at 44,589. There are no inescapable, unforeseen, or extraordinary circumstances in this case; only quite usual events took place. We refuse to interpret them otherwise and find the appeal untimely.

*Town Center,* 87–1 BCA ¶ 19,640, at 99,419.

■ There is little here which would clear up the inconsistencies found in the main opinion. Neither opinion actually addresses the plaintiff's allegations. This court can find no language in any binding case [2] limiting the application of equitable waiver to findings of "inescapable circumstance, unforeseen catastrophe or extraordinary incident." Rather the cases merely require a showing of good cause. *Monroe M. Tapper,* 198 Ct.Cl. at 77, 458 F.2d at 69. Further, as noted by the dissent a "recon-

---

**2.** The court notes that the case of *SWH Co.,* DOT CAB No. 72–29, 72–2 BCA (CCH) ¶ 9570 (1972), cited by the concurrence, is not binding precedent as neither the Board nor the Claims Court can limit application of Court of Claims or Federal Circuit precedent. The language of *SWH Co.* is at best persuasive authority on the question of what the Court of Claims meant by the words "good cause". It cannot limit applica-

tion of the doctrine only to "the occasional case of inescapable circumstance, unforeseen catastrophe, or extraordinary incident." *Id.* at 44,589. This court is of the opinion that the words "good cause" are meant to be much broader than the Board's narrow interpretation in *SWH Co.* They are, for instance, in this court's view, meant to be applied in cases such as the one at bar.

sideration begun within the time for appeal extends the time for appeal. *Roscoe–Ajax Construction Co. v. United States,* 198 Ct.Cl. 133, 458 F.2d 55, 63 (1972)."

■ The government's argument that the Board has exercised its discretion is not supported by the record. There is very little or no discussion of the equitable concerns underlying the issue presented here. At most, the Board focused solely on the conduct of plaintiff with no regard for the CO's conduct or what was allegedly said at the February 13, 1985, meeting or in other communications between the parties. *Monroe M. Tapper* makes it clear that when equitable concerns arise, the positions and circumstances of all parties must be considered when properly exercising discretion:

> Moreover, even if discretion was exercised, it is clear that the Board focused solely on the conduct and responsibilities of Tapper, not considering Granger's interests or position at all. Although Tapper, as the prime, is the proper and necessary plaintiff and the named contractor, Granger is obviously the real party in interest, except in the formal and technical sense. When purely legal rights are being appraised, such as the timeliness of the appeal, the defendant can rightly insist that the notice had to be filed in Tapper's name and the time began to run when Tapper received the contracting officer's decision. But when the equitable concept of discretion-to-waive is invoked, all the pertinent circumstances must be evaluated, including Granger's role vis-a-vis the Government and the Government's conduct toward and dealings with Granger.

*Monroe M. Tapper,* 198 Ct.Cl. at 77, 458 F.2d at 69.

Because this court is of the opinion[3] that the Board did not properly exercise its discretion, the court remands the case to the

Board for consideration of the propriety of a waiver in light of all the factors of this case and the proper equitable concerns found in *Monroe M. Tapper.*

**B. The Quasi–Appeal Argument**

■ Plaintiff also contends that the January 31, 1985, letter from TCM to the CO constituted a quasi-appeal. The Board has in the past found many appeals akin to this one to be quasi-appeals. A main factor has been a finding of an intention to appeal. *Reading Clothing Manufacturing Co.,* ASBCA No. 3912, 57–1 BCA (CCH) ¶ 1290 (1957). In a case close to this one it was held that a contractor who, within 30 days of a final decision, wrote "We do not agree with your letter of 30 March 1953," had filed a timely appeal. *James Lumber Co.,* ASBCA No. 1991 (March 31, 1954). The quasi-appeal cases, acting as at least persuasive precedent, would indicate that the Board should have considered the situation here in light of its prior decisions on quasi-appeal notices.

The government opposes plaintiff's argument with two of its own. First, it argues that the quasi-appeal decisions of the Board are not binding on this court and are not even good law. The defendant is correct that the quasi-appeal decisions are not binding upon this court. They are, however, persuasive authority in this court as well as at the Board. Since the quasi-appeal cases are Board precedent, the Board should consider whether they apply in this case.

As regards the government's contention that such cases are no longer good law, there is no support cited. The argument goes that because the Board's quasi-appeal decisions were based upon the Board's strict reading of the time limits in the disputes clause, the quasi-appeal decisions are no longer good law since the Court of Claims began interpreting the disputes clause time limit as contractual and subject to waiver.[4]

3. In defending the Board's decision the government stated, at oral argument, that TCM was an experienced contractor and therefore should have timely appealed. This argument instead cuts in plaintiff's direction. An experienced contractor would have timely appealed in the absence of a real belief that the January 25, 1985, decision was not final or no longer of final effect.

4. The disputes clause was originally strictly construed by the Board. Therefore, as a way of avoiding potential harshness, the Board began

The contention is worthy of little weight. In *Moran Bros., Inc. v. United States,* 171 Ct.Cl. 245, 250, 346 F.2d 590, 593 (1965), the Court of Claims indicated that the limits were not jurisdictional and could be waived in proper cases. Therefore, since many quasi-appeal cases were decided after 1965, the court finds the government contention to be faulty. *See Larco–Industrial Painting Corp.,* ASBCA No. 13222, 68–2 BCA (CCH) ¶ 7314 (1968).

The government also contends that there was no (1) manifest present intent to appeal and (2) no indication that the government actions would give rise to any justifiable reliance that the appeal period was tolled. *Roscoe–Ajax Construction Co. v. United States,* 198 Ct.Cl. 133, 458 F.2d 55 (1972). The circumstances of this case though indicate to the contrary. It appears that the letter of January 31, 1985, did indicate a present intent to appeal absent an amicable solution being reached with the CO. And, as noted before, the plaintiff pled facts which would indicate that the government acted as though the final decision of January 25, 1985 was either tolled or was no longer in effect.

CONCLUSION

Pursuant to RUSCC 60.1 this case is remanded to the Board for a period not to exceed six months. The GSBCA shall make a determination of whether the equitable doctrine of "discretion-to-waive" should be applied to plaintiff's appeal. Further, the Board is to consider the question of whether the January 31, 1985, letter from TCM to the CO acted as a quasi-appeal of the CO's January 25, 1985, decision. Plaintiff shall file at 90–day intervals a status report indicating the status of proceedings on remand.

interpreting timely filed but unclear appeal notices as timely filed quasi-appeals.