**Patrick J. MULLEN, Plaintiff,**

v.

**UNITED STATES, Defendant.**

**No. 116–86C.**

United States Claims Court.

Aug. 4, 1989.

Keith A. Rosenberg, Washington, D.C., for plaintiff.

John S. Groat, with whom were Asst. Atty. Gen., Richard K. Willard, David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, for defendant.

## OPINION

SMITH, Chief Judge.

The plaintiff, Patrick J. Mullen, an honorably discharged Vietnam veteran, seeks relief from a decision of The Army Board for Correction of Military Records (Board). The Board declined, because of plaintiff's alleged untimely filing, to review the merits of plaintiff's claim that he should be placed on the temporary disability retirement list retroactive to September 8, 1970, the date of his discharge from active duty. The case is currently before the court on a motion to dismiss. In its motion the defendant argues that this court has no jurisdiction to review the Board's refusal to decide plaintiff's case on the merits. For the reasons given below, the court denies defendant's motion.

## FACTS

Mr. Mullen began the journey that leads him here with his induction into the United States Army as a private on December 5, 1968. After training he was sent on a one year tour of duty in Vietnam. There the record shows that he served his country well as an M60 machine gunner involved in much heavy combat. Mr. Mullen experienced the agony of war when he was ordered to and did kill an enemy soldier at close range and after interrogation. For his efforts on behalf of his country, plaintiff earned the "Army Commendation Medal" for heroism during a September 12, 1969, battle. He was promoted to sergeant on April 2, 1970.

The Vietnam experience took a heavy toll from Mr. Mullen. A Report of Psychiatric Evaluation completed on July 15, 1970, about forty days after his reassignment

from Vietnam to Fort Meade, Maryland, reads in part:

### Diagnosis

Anxiety reaction, acute, moderately severe.

### Pertinent History

This individual returned from a twelve month tour in Vietnam approximately forty days ago and has been assigned to the Marksmanship Training Unit. Over the last four months of his tour in Viet nam [sic] he became progressively nervous and jumpy and since returning to the states has been quite jumpy. He has had difficulty sleeping, nightmares, and tremulousness. He has been frightened by loud noises and his actions when angered or frightened have been unpredictable.

### Mental Status

This is a cooperative and pleasant individual who is visibly shaky during the interview with constant trembling of his hands. There is no thought disorder or evidence of psychosis. He is fully oriented and of average intelligence.

### Findings and Conclusions

In my opinion the above-named person was and is mentally responsible, able to distinguish right from wrong and to adhere to the right, and has the mental capacity to understand and participate in board proceedings. The above-named person has no mental disease or defect sufficient to warrant disposition through medical channels.[1]

This individual is presently suffering an anxiety reaction since returning from Vietnam and it is the opinion of this examiner that he would be highly unreliable around weapons. It is therefore strongly recommended that he be reassigned to a job where he would not be handling weapons and preferably not to a combat

---

1. This particular language appears to be standard language found on the Report of Psychiatric Evaluation form.

arms unit where he might be handling weapons in an emergency or on maneuvers.

Because of the above described condition, and an expressed interest in attending college, plaintiff left active service in the Army on September 8, 1970; about three months prior to the December 5, 1970, expiration of his two year commitment. Plaintiff began his college career in the fall of 1970, however, he continued to suffer from the anxiety mentioned in the psychiatric evaluation. He soon withdrew from college because of nervousness. Thereafter, plaintiff took a job at a Westfield, Massachusetts papermill. He held that job for ten years until the papermill closed in 1980. It appears that his nervousness and anxiety reappeared and increased after the mill closed.

In 1981 plaintiff entered the Veterans Administration (VA) clinic in Northhampton, Massachusetts. While at the clinic plaintiff allegedly exhibited signs of abusive and explosive behavior including: (1) pacing regularly; (2) experiencing severe flashbacks; (3) seeing the ghost of the enemy soldier he killed face to face; (4) chasing orientals without provocation; and (5) thinking of committing suicide. In August of 1981, the VA determined that plaintiff was suffering from Post Traumatic Stress Disorder (PTSD). At the time PTSD was a newly diagnosed illness affecting a number of Vietnam veterans. He was initially granted VA disability of 50% which was, on July 11, 1983, increased to 100% disability retroactive to February 10, 1981.

In the meantime, plaintiff discovered the existence of the Board early in 1982. Soon thereafter, on April 13, 1982, he filed with the Board a *pro se* application for correction of his military records. In his application he sought placement on the temporary disability retirement list rather than an honorable discharge.

On September 14, 1983, plaintiff's April 13, 1982, application was denied pursuant to 10 U.S.C. § 1552(b) (1982) which provides:

(b) No correction may be made under subsection (a) unless the claimant or his heir or legal representative files a request therefor before October 26, 1961, or within three years after he discovers the error or injustice, whichever is later. However, a board established under subsection (a) may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice.

The Board held that plaintiff had not timely filed and had failed to submit sufficient reasons to waive the three year time limit in the interest of justice. Following the initial denial, plaintiff requested reconsideration of his application. This time plaintiff included affidavits from his mother and his wife indicating his condition at the time of his return to the states and throughout his tenure at the papermill. Plaintiff's second application was denied on February 6, 1985. This time, however, the Board, consistent with 10 U.S.C. § 1552(b) (1982), examined the underlying merits of the application to determine whether it was in the interest of justice to waive the time limitation. In concluding that there was no reason presented why a late filing should be allowed, the Board determined that neither the medical records nor the affidavits supported a finding that plaintiff was unfit for duty in 1970.

Plaintiff then filed for a second reconsideration of the Board's decision. This time plaintiff included a report of a certified forensic psychiatrist diagnosing him as unfit for service as of his discharge date in 1970. Again, on October 15, 1986, the application was denied. The Board based its determination upon several factors including a reiteration of the position that plaintiff was within retention standards at the time of his discharge and that the claim was barred by the three year statute of limitations found in 10 U.S.C. § 1552(b) (1982). The Board also noted that evidence in the record did not indicate enough physical or mental incompetency on plaintiff's part to require a waiver of the three year limit.

## DISCUSSION

### A. *Jurisdiction*

■ Defendant proposes that the court dismiss plaintiff's complaint here because,

in its view, the decision of the Board to reject plaintiff's application on grounds of untimeliness is not reviewable by the Claims Court. It contends that a decision on the merits by the Board is a prerequisite to judicial review. In support of this position, defendant relies upon the tandem of *Friedman v. United States*, 159 Ct.Cl. 1, 310 F.2d 381 (1962) *cert. denied sub nom. Lipp v. United States*, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963), and *Ballenger v. Marsh*, 708 F.2d 349 (8th Cir. 1983). Friedman, an important case in the history of military pay jurisprudence, generally stands for the proposition that servicemen must exhaust their administrative remedies prior to review in this court. The *Ballenger* decision, however, concerns directly the issue presented here and holds, though without much discussion, that decisions on whether to waive the three year limit are discretionary with the boards and not judicially reviewable.

Plaintiff cites numerous cases which, if persuasive, would lead the court to conclude that all board decisions, whether on the merits or on the question of timeliness of filing, are reviewable. In *Boruski v. United States*, 493 F.2d 301 (2nd Cir.1974), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975), the court, with no discussion of the issues presented here, held that the Air Force Board for Correction of Military Records did not abuse its discretion in declining to correct the records of the plaintiff in that case. The plaintiff in Boruski had waited twelve years after a 1957 Court of Claims' judgment in his favor to file an application seeking full military status including promotions and back pay. In *Mulvaney v. Stetson*, 470 F.Supp. 725 (N.D.Ill.1979), a district court, citing *Boruski*, held that a board's decision holding a serviceman's application untimely was reviewable:

[I]f the Correction Board determines that the serviceman's failure to comply with the time limits was inexcusable and that the interest of justice does not dictate consideration of the request, then the Correction Board will deny relief on timeliness grounds, and our review of this decision would be limited to a determina-

tion of whether the Board properly refused to hear the claim on that basis. *Id.* at 730. The D.C. Circuit in *Baxter v. Claytor*, 652 F.2d 181 (D.C.Cir.1981) implied that such a decision was reviewable when it said:

Regardless of when Baxter discovered the alleged injustice, the Board can consider Baxter's claim if it is in the interest of justice. This determination is for the Board to make in the *first instance.* (Emphasis added).

*Id.* at 186. *See also, Thornton v. Coffey*, 618 F.2d 686, 692 (10th Cir.1980).

While the cases are split with neither side having a clear preponderance, the weight of logic and persuasive authority requires a decision that board decisions be fully reviewable. First, defendant's main case, *Ballenger*, provides no logical basis for its conclusion that the board's timeliness decisions are not reviewable. The *Ballenger* court said "it is well within the board's discretion not to consider Ballenger's [late] application at all." *Ballenger*, 708 F.2d at 351. This court, as it is not bound by *Ballenger*, respectfully disagrees. The boards are statutorily required to examine an application to determine whether it is in the interest of justice to waive the time limit. Therefore, in the court's view, board discretion is not unlimited. A flat out denial without consideration of factors weighing the interest of justice would seemingly be an abuse of discretion and inconsistent with congressional intentions found in 10 U.S.C. § 1552(b).

The defendant's reliance upon the rationale of *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) and similar cases does not provide defendant the necessary support. *Webster* stands for the proposition that courts may not review agency decisions when there is no standard upon which to judge the action. One reason why *Webster* can be distinguished from the current case is the text of the statute in *Webster*. That statute provided: "the director of [the CIA] may, in his discretion, terminate the employment of any officer or employee...." 50 U.S.C. § 403(c) (1982).

This is a far cry from the text of 10 U.S.C. § 1552(b) (1982). In *Webster* Congress left "discretion" solely in the Director's hands without qualification. In this case a board may waive the three year limit when it is in the interest of justice to do so. The use of the word "may" does not provide a board with unlimited discretion, it merely provides that when a board determines it is in the interest of justice to waive the time limit it may, in the proper exercise of its discretion, do so. In this regard "may" should be read as "shall". The court cannot envision a situation where a board could find that the interest of justice required a waiver but yet could somehow decline to waive the time limit.

Such a reading is consistent with the available legislative history. It is clear from the legislative history that the waiver provision of section 1552(b) was a compromise intended to operate as a safety valve in cases where a serviceman was unable to file his application within three years from discovery. It provides authority to the boards to waive the three year requirement where it is in the interest of justice to do so. Nowhere in the available legislative history is there any mention of unbridled discretion being placed in the boards. In fact, the general tone of the reports indicates that the boards should waive the requirement when an injustice is present. Initially, the Department of Defense opposed any limitation. However, after the addition of a strict three year limit, the Department withdrew its opposition conditional upon insertion of the current provision giving the boards authority to waive the limit when the interest of justice requires it. This indicates that the Department contemplated a waiver of the three year limit whenever the interest of justice requires it. And Congress apparently agreed as it passed the legislation in its present form.

The boards were set up to review and correct erroneous military records. They establish a way of introducing some semi-independent review of military discharge matters and thereby alleviate lifetime hardships which may fall upon members of the military who have been in some manner erroneously discharged. *See generally*, Lunding, *Judicial Review of Military Administrative Discharge*, 83 Yale L.J. 33 (1973). Judicial review is another protection which it appears Congress intended to provide in this remedial scheme. Therefore, this court concludes that the actions of the various boards for correction of military records in denying untimely applications are subject to review limited to the question of whether the board decision was an abuse of discretion.

Furthermore, it is apparent to the court that there is a discernable standard upon which it may base its review. "To make [a finding of abuse of discretion this] court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Here, the relevant factors upon which the boards are to base their decisions are inherently of the type which judges decide frequently when passing upon statutes of limitations or other related questions. While the factors upon which a decision must rest vary with each case, they are generally of the type where the board or court may ask whether there is a valid reason to toll or waive the time limitation. Such questions are not unlike those which the boards of contract appeals considered in cases where a contractor filed its appeal after the 30-day time limit found in the pre-CDA disputes clause. *Monroe M. Tapper v. U.S.*, 198 Ct.Cl. 72, 458 F.2d 66 (1972); *Town Center Management v. United States*, 17 Cl.Ct. 531 (Cl.Ct.1989). Questions of whether it is in the interest of justice to waive the three year limit do not fall into that area where there are particular matters of agency expertise or internal agency or military management decisions. See *Webster v. Doe*, 484 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Panama Canal Co. v. Grace Line, Inc.*, 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958); *Ferry v. Udall*, 336 F.2d 706 (9th Cir.1964), *cert. denied*, 381 U.S. 904, 85 S.Ct. 1449, 14 L.Ed.2d 286 (1965).

### B. *Abuse of Discretion*

The abuse of discretion standard allows only a very limited review of the prior proceedings. This court's role in this case is to determine whether the Board's decision is "clearly unreasonable, arbitrary, or fanciful ...; based on an erroneous conclusion of law ...; clearly erroneous ...; or contains no evidence on which the [board] rationally could have based its decision." *Heat & Control, Inc. v. Hester Ind.*, 785 F.2d 1017, 1022 (Fed.Cir.1986) (citations omitted); *see also Sanders v. United States*, 219 Ct.Cl. 285, 301–02, 594 F.2d 804, 813 (1979).

With these principles in mind, the court, after a review of the three decisions of the Board, and the record currently before it, feels constrained to uphold the decision of the Board not to review the merits of the application. Among the several items which the Board considered are the following: (1) the July 9, 1970, medical report indicating an acute anxiety reaction which was not medically unfitting; (2) a September 1, 1970, statement by plaintiff indicating he was in good health; (3) the September 1, 1970, separation medical examination finding the applicant mentally and physically qualified for separation with no disqualifying defects; (4) the VA finding that plaintiff had PTSD and its award of 100% disability dating from February 10, 1981; (5) affidavits from plaintiff's mother and wife; (6) an Office of the Surgeon General report indicating that there was no evidence that plaintiff exceeded military retention standards in effect in 1970; (7) a letter from a VA staff psychiatrist indicating that the July, 1970 psychiatric examination was the first documented evidence of plaintiff's stress reaction; (8) a letter from a private psychiatrist indicating that the PTSD was a direct result of the plaintiff's Vietnam experience; (9) the plaintiff's ability to hold a job for ten years prior to the 1980 papermill closing.

The Board's conclusions, based upon the above are rational and not arbitrary such as to require a finding of abuse of discretion. The Board's conclusion that plaintiff was not incompetent during the ten year period following discharge has a rational basis in the record. Further, the conclusion that plaintiff was within retention standards at the time of his discharge appears to follow from the record, although there is conflicting evidence.

The court is, however, concerned with one aspect of plaintiff's case. That is the question of whether the Board should or should not have waived the three year time period in light of the relatively recent recognition of PTSD as a specific illness which plaintiff may or may not have been afflicted with at the time of his discharge. The court will therefore allow the plaintiff to file an additional brief focusing on the following two questions: (1) whether plaintiff was afflicted with PTSD at the time of his discharge in 1970; (2) whether the recognition of PTSD in the late 1970's and the fact that plaintiff was diagnosed to have the illness in 1981 are sufficient reasons for the Board to waive the three year limit in the interest of justice. The plaintiff, if he so chooses, shall file any brief within 60 days from the filing of this opinion. Thereafter, any opposition by defendants shall be filed within 30 days of the service of plaintiff's brief. Any reply shall be filed within 15 days of the service of the opposition.

IT IS SO ORDERED.